UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT DISPUTES

REPORT AND RECOMMENDATION OF SPECIAL MASTER

------------------------------------------------------------ x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS SETTLEMENT APPEALS OF REGISTRANT ROYALPAY, INC.

1:26-MC-03208-BMC-JAM

------------------------------------------------------------ x

**Parties**:

RoyalPay, Inc. (“Royal”).

Rule 23(b)(3) Class Plaintiffs (the “Class”)

**Counsel**:

Peter Nassif
RoyalPay, Inc.
809 Locke Ln.
Yorktown Heights, NY 10598
917-716-3196
payments@royalsecure.com
peter@royalsecure.com
Representative of Royal

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 Wests Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

I. Background

On May 16, 2024, Royal registered 207 Taxpayer Identification Numbers (“TINs”) with the Class Administrator seeking to recover proceeds from the damages class settlement in *In re*

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 05-MD-01720-BMC-JAM (E.D.N.Y.) ("*MDL 1720*"). The Class Administrator has designated Royal as a Payment Facilitator with respect to all of those TINs. Royal disputed that designation but in doing so provided only information about its clients; it has never submitted – to the Class Administrator or to me – any explanation as to why it believes the Payment Facilitator designation to be unwarranted.[1] As explained below, I respectfully recommend that the Court find that Royal is not a class member because the payment processing service it provides does not constitute "acceptance" of payment cards for purposes of the settlement agreement.

Four prior decisions, all arising from the litigation in *MDL 1720*, provide the legal context for this dispute. First, when the Court gave final approval to the proposed damages class settlement, it endorsed the settling parties' definition of the class as consisting of "[a]ll persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-

[1] On May 22, 2025, the Class Administrator sent a deficiency notice to Royal advising that it would need to submit its contract with each merchant to substantiate its authorization to act on behalf of all of them before the dispute could be considered further. Royal later submitted documents in support of its registration of 197 TINs. In most instances, the submission included a standardized "Provider Merchant Agreement" with attached data printouts including merchant information but not including any identifiable signatures or any other indicia of an intent to be bound by the accompanying contracts. Instead, the form agreements recited that any attached printouts should be treated as the equivalent of a merchant's signature. The Class Administrator deemed all such filings insufficient to trigger further review.

The Class Administrator sent out the deficiency notices before the Court issued its decision in *In re MDL 1720 Damages Class Settlement Disps.* ("*Settlement Disputes*"), 2026 WL 1729167 (E.D.N.Y. June 16, 2026) ("*Teleflora*") (adopting in part report and recommendation). In *Teleflora*, the Court adopted my recommendation to find that the registrant was not a class member and on that basis declined on mootness grounds to adopt my recommendation to require the company to submit its contracts with each of the thousands of merchants whose TINs it had registered. *See id*. at *3; *Settlement Disputes*, 2026 WL 825503, *9-10 (E.D.N.Y. Mar. 17, 2026) ("*Teleflora R&R*"). In light of that ruling, I suspended the contract-filing requirement and asked Royal to submit argument to me supporting its position on class membership. Royal has not responded. I submit this report and recommendation so as to resolve the status of the TINs that the Class Administrator will otherwise be unable to process further.

Branded Cards in the United States at any time" during the relevant period, with exceptions not pertinent here. *See MDL 1720*, 2019 WL 6875472, at *31 (E.D.N.Y. Dec. 16, 2019) (the "Approval Order") (quoting Superseding Settlement Agreement ¶ 4) ), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023) ("*Fikes*"). In doing so, the Court overruled an objection from a group of franchisee entities that owned and operated gas stations (the "Branded Operators") that the use of "accepted" might allow their franchisor oil company suppliers to supplant them as class members and that uncertainty about that issue made class membership impossible to determine. *See id*.

Second, in affirming the Approval Order, the Second Circuit likewise rejected the Branded Operators' arguments. After acknowledging the ambiguity of the word "accepted," *Fikes,* 62 F.4th at 715, the court clarified the core question those arguments raised:

> The dispute is not over which group of class members will get the recovery; the dispute is over which claimants are within the class. Whoever "accepted" the payment cards is by definition in the class, gets compensation, and is bound by the release; an entity that did not accept the payment is by definition excluded from the class and is not bound by the settlement.

*Id*. at 717. Because that dispute did not implicate the requirement that a class must have ascertainable membership to be certified, the court did not need to decide who – as between franchisors and franchisees – had "accepted" payment cards and were therefore class members. *See id*. at 718.

Third, in *MDL 1720*, 735 F. Supp. 3d 249 (E.D.N.Y. 2024), *reconsideration denied*, 2025 WL 2490442 (E.D.N.Y. Aug. 29, 2025) ("*PayFacs I*"), *aff'd*, 2026 WL 1210154 (2d Cir. May 4, 2026) ("*PayFacs II*"), Judge Brodie ruled that two payment facilitators – Block, Inc., f/k/a Square, Inc. ("Square"), and Intuit Inc. and Intuit Payment Solutions, LLC (collectively, "Intuit") – had not "accepted" payment cards used to pay for goods and services sold by their merchant clients and therefore were not members of the Class. *See id*. 735 F. Supp. 3d at 252. To reach

that conclusion, Judge Brodie considered several factors, as summarized on review by the Second Circuit:

> (1) Square's merchant agreement, which states that Square allows merchants "to *accept* Cards from customers," *id.*; (2) Square's Complaint, which alleges that Square "helps Sellers (merchants who utilize Square to *accept* payment cards ...) start, run, and grow their businesses, including by enabling Sellers to *accept* card payments," *id.*; (3) Visa's rules, which distinguish between a "Payment Facilitator" and a "Merchant" and provide that an entity cannot simultaneously act as both a payment facilitator and a merchant, *id.* at 265; (4) Mastercard's rules, under which Sellers "accept" payment cards while payment facilitators facilitate the acquiring of transactions, *id.* at 266; (5) the Square Sellers' own declarations, which describe themselves as businesses that *accept* credit and debit cards, *id.*; (6) the "way real-world transactions are conducted" in which the "cardholder hands her card to a Seller, who 'accepts' it for payment at the point of sale," *id.* at 264; and (7) the incongruence of interpreting the word "accepted" to mean that Square "'accepts' a payment card, but the [Square] Seller 'accepts' cash, for two otherwise identical transactions," *id.* at 265.

*PayFacs II*, 2026 WL 1210154, at *1.[2]

Finally, in *Teleflora*, as in this case, a payment facilitator ("Teleflora") challenged the Class Administrator's determination that it was not a class member and therefore ineligible to register a claim. In seeking my review, Teleflora noted a number of ways in which its contracts with merchant clients differed from the contracts between Square and Intuit and their respective clients. I analyzed those arguments in detail and concluded that they either replicated arguments by Square and Intuit that Judge Brodie explicitly rejected in *PayFacs I* or were not meaningfully different for purposes of determining class membership. *See In re MDL 1720 Damages Class Settlement Disputes*, 24-MC-03415-BMC-JAM (E.D.N.Y.), ECF 2 at 5-11 (Mar. 17, 2026). I

---

[2] In affirming Judge Brodie's analysis, the court observed that "[f]ew persons are in a better position to understand the meaning of a settlement than the district judge who oversaw and approved it[.]" *Id*. at *2 (quoting *W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 33 (2d Cir. 1996) (cleaned up)). At the time Judge Brodie oversaw and approved the *MDL 1720* damages class settlement, I was the magistrate judge assigned to the case. In that role, I sat on the bench with Judge Brodie for oral argument of the objections to the proposed settlement. *See MDL 1720*, ECF 7774 (minute entry dated Nov. 7, 2019).

therefore recommended that this Court find that Teleflora had not accepted payments for its merchant clients' transactions and was not a class member. *Id*. at 17. This Court adopted that recommendation, reasoning as follows:

> Teleflora points to a number of factors that purportedly distinguish its situation from the situation presented in *PayFacs I*. The Court disagrees, and not just because many of these factors were actually considered in *PayFacs I*. Rather, it simply does not matter how many and in what ways Teleflora differs from Square and Intuit because they are the same in the one respect that matters: they don't accept payment cards.

*Teleflora* 2026 WL 1729167, at *2.

II. Analysis

Applying the reasoning of the cases discussed above, Royal plainly did not accept payment cards within the meaning of the settlement agreement and is not a class member. Its standardized Provider Merchant Agreements (a sample of which the Class Administrator has provided to me) explicitly acknowledge that each merchant client has engaged Royal "to act as a payment facilitator" to the merchant. Sample Provider Merchant Agreement, preamble. The form contracts further recite that Royal is "entering into this Agreement with you [*i.e.*, the merchant client] so that you may accept certain [payment] Cards." *Id*. § 1. Royal agrees to "provide you with the services … necessary for the authorization, processing, and settling of transactions … between you and a Cardholder in which a Cardholder uses a Card to purchase your goods or services." *Id*.; *see also id*. ("When we refer to a 'Card' in this Agreement, it means an account (or evidence of an account) that you accept as payment for a good or service that you provide[.]"); *id*. §2.3 ("you agree to accept all categories of Visa and Mastercard Cards"); *id*. § 4.1 ("you are authorized to accept Cards pursuant to this Agreement rather than a merchant agreement").

In *Teleflora*, this Court summed up the relevant holding of the *PayFacs I* decision, "which withstood Second Circuit review." 2026 WL 1729167, at *2. First "only one entity in a payment chain can be a class member." *Id.* Second, "in a payment chain containing a merchant who accepts cards, and a payment facilitator who enables the merchant to accept cards, the merchant is the class member and the payment facilitator is not." *Id*. As the Court concluded:

> The question before the Court is whether Teleflora gets to be a class member not by virtue of its own sales, but by virtue of its member florists' sales which it facilitates. Logic must prevail here: Teleflora is not the one accepting cards for the member florists' transactions, so Teleflora is not the one that gets to "accept" the settlement proceeds relating to those transactions.

*Id*. So, too, here: in registering the TINs at issue, Royal has sought to be treated as a class member because of the client transactions it facilitated rather than by virtue of its own sales. Under the reasoning of both *PayFacs* and *Teleflora*, the Court should reject that position and find that Royal is not a class member and therefore ineligible to register merchant TINs.[3]

III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court find that Royal is not a member of the settlement class and that the Class Administrator therefore need not grant it authority to submit its claims.

IV. Objections

This Report and Recommendation will be served on Royal via the Court's ECF system and also by the Class Administrator.[4] Any interested party shall have 21 days from today's date

---

[3] To the extent Royal may have accepted payment cards as payment from its clients or others for goods and services that it sold to them, such transactions are not at issue here. Royal may well be a member of the class with respect to such transactions. *See Teleflora*, 2026 WL 1729167, at *3 n.2.

[4] In this case, where the issue is a single registrant's status rather than a conflict between two or more registrants, the only party to be served in the first instance is Royal. While the hundreds of merchants associated with the TINs Royal has registered (or their successors in interest) may

to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03208-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMA-JAM, ECF 1, ¶ 4.

Dated: August 6, 2026

*/s/ James Orenstein*
Special Master

---

have a potential interest in the outcome here, neither the Class Administrator nor I (nor the Court) necessarily has contact information for all of them. If the Court adopts the foregoing recommendations, the lack of notice will not prejudice any such merchant. However, in the event the Court rejects or modifies the recommendation and finds that the Class Administrator should not designate Royal as an authorized registrant as to some TINs. In some such cases, Royal's registration of a TIN may be in conflict with other filers' registrations of the same TINs. I respectfully recommend that where such conflicts arise, the Class Administrator should provide a copy of the Court's decision and this report and recommendation to all parties to the conflict. I further recommend that merchants involved in such conflicts retain the right to contest Royal's class membership on the ground that it did not accept payment cards within the meaning of the Settlement.